**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ARCHERY LYNN OVERSTREET,

        Petitioner,

vs.                           Case No.:    3:16-cv-788-J-34JBT
                                                   3:11-cr-009-J-34JBT

UNITED STATES OF AMERICA,

        Respondent.

_____/

## ORDER

This case is before the Court on Petitioner Archery Lynn Overstreet's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1; § 2255 Motion) and Supporting Memorandum (Civ. Doc. 11; Memorandum).[1] Overstreet pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). The Court sentenced him to a term of 420 months in prison after determining he was an armed career criminal under § 924(e).[2] (See Crim. Doc. 41; Judgment). Overstreet raises a single claim: that the Court wrongly sentenced him under the Armed Career Criminal Act (ACCA) in light of the United States Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015). The United States has responded (Civ. Doc. 13; Response), and Overstreet has replied (Civ. Doc. 22; Reply). The Court has also considered Overstreet's

---

[1]    Citations to the underlying criminal case, United States vs. Archery Lynn Overstreet, No. 3:11-cr-9-J-34JBT, will be denoted "Crim. Doc. __." Citations to the civil § 2255 case, No. 3:16-cv-788-J-34JBT, will be denoted "Civ. Doc. __."

[2]    Section 924(e) imposes an enhanced 15-year mandatory minimum prison sentence on defendants convicted of being a felon in possession of a firearm and who have three or more prior convictions for a violent felony, a serious drug offense, or both, committed on occasions different from one another. 18 U.S.C. § 924(e)(1).

notice of supplemental authority (Civ. Doc. 23; Supp. Auth.), the United States' response to the supplemental authority (Civ. Doc. 27; Response to Supp. Auth.), and Overstreet's reply (Civ. Doc. 34; Reply Concerning Supp. Auth.). Thus, the matter is ripe for review.

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[3], the Court has considered the need for an evidentiary hearing and determines that a hearing is not necessary to resolve the merits of this action. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[4] For the reasons set forth below, Overstreet's § 2255 Motion is due to be denied.

## I.     Background

The facts and circumstances of this case are well set out in the Eleventh Circuit's opinion affirming Overstreet's sentence on direct appeal. United States v. Overstreet, 713 F.3d 627, 629-634 (11th Cir. 2013). The Court repeats the essential facts here:

### A. The Indictment

A federal grand jury issued a superseding indictment (the "indictment"), charging Overstreet with one count of possessing a firearm while being a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The indictment alleged that Overstreet previously was convicted in Texas state

---

[3]     Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

[4]     Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

court of five crimes punishable by imprisonment for a term exceeding one year: (1) burglary of a building, committed in July 1983; (2) burglary of a habitation, committed on May 27, 1986; (3) attempted murder, committed on May 27, 1986; (4) aggravated sexual assault, committed on May 28, 1986; and (5) another attempted murder, committed on May 28, 1986.[5]

## B. Overstreet's Prior Convictions

Overstreet's four most serious prior convictions—burglary of a habitation, two attempted murders, and aggravated sexual assault—stemmed from a crime spree that occurred in Texas on May 27 and 28, 1986. That crime spree began with burglary, when Overstreet and his brother, Clifford Carter, entered a private home without permission and stole 13 firearms and a car. Later that evening, Overstreet and Carter were pulled over by two police officers for a seatbelt violation. As the officers approached the car, both Overstreet and Carter fired handguns at the officers. One of the officers was grazed by a bullet on his right temple and fell to the ground, but survived. The officers fired back, and Overstreet and Carter drove off.

Overstreet and Carter then drove to a relative's home in an apartment complex, approximately seven miles away from the place of the police shooting. They saw a young woman entering her minivan in a parking lot. Overstreet and Carter entered the minivan, threw the woman into the back, and drove to a secluded area outside of Houston, Texas, near the Brazos River. They then forced the woman to remove her clothing and raped her twice. After the rape, Overstreet and Carter made the woman walk away from the minivan wearing only her bra and underwear. When the woman was approximately 15 feet away from the minivan, Overstreet and Carter each shot her in the back. Four bullets hit the woman, and she fell down an embankment. Overstreet later told the police that the woman was still breathing when he and Carter left her, but they did not shoot her again because they thought she would die anyway. Fortunately, the woman survived. After the assailants left the scene, she managed to crawl to a nearby residence and was taken to a hospital, where she underwent extensive surgery to remove her left kidney, remove a section of her large and small intestines, and repair her lung.

As a result of this crime spree, Overstreet received one conviction for burglary, two convictions for attempted capital murder (for shooting the officer and the woman), and one conviction for aggravated sexual assault. He was sentenced in state court to a total of 60 years in prison.

---

[5] The indictment mistakenly listed the dates of both burglary convictions as October 16, 1986, and the dates of the other three convictions as May 30, 1986. However, Overstreet's conviction records show that the burglary-of-a-building offense occurred in July 1983, and the other four offenses occurred on May 27 and 28, 1986. Overstreet did not challenge the mistaken dates in the indictment.

## C. The Present Offense

While serving his 60–year sentence in Texas, Overstreet married a long-time friend, Taffy Overstreet ("Taffy"). In 2008, after spending approximately 22 years behind bars, Overstreet was released on parole under strict supervision and went to live with Taffy at her house in Houston. He was 49 years old at the time of his release. As part of his many parole conditions, Overstreet had to wear an electronic monitoring ankle bracelet that would set off an alarm if he left his home between 6:30 p.m. and 9:00 a.m.

On November 8, 2010, at approximately 5:30 a.m., Overstreet cut his electronic ankle bracelet, setting off an alarm, and fled Texas. Around the same time, Taffy disappeared and has not been seen or heard from since. Overstreet was eventually caught on December 8, 2010, in Jacksonville, Florida. Among other things, the police discovered a loaded gun and a roll of blood-stained duct tape in the trunk of the car he was driving.[6]

Overstreet was the prime suspect in Taffy's disappearance, but her body was never found, and Overstreet was not charged with her murder. Rather, Overstreet was indicted in federal court on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). He pled guilty to this firearm offense, but did not admit the existence and nature of his prior convictions, aside from the fact that he had at least one prior felony. Overstreet expressly reserved the right to contest his potential sentencing enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).

At Overstreet's sentencing hearing for the present offense, the district court found that the government proved by a preponderance of the evidence that Overstreet murdered Taffy while absconding from parole….

## D. Sentencing Guideline Calculations

According to the Presentence Investigation Report ("PSI"), Overstreet's initial base offense level was 24, pursuant to U.S.S.G. § 2K2.1(a)(2). The PSI then classified Overstreet as an armed career criminal under the ACCA and U.S.S.G. § 4B1.4(b) because he had at least three prior convictions for a violent felony. The ACCA classification resulted in an offense level of 33. Overstreet qualified for a total three-level reduction under U.S.S.G. § 3E1.1(a)–(b) for acceptance of responsibility, yielding a total offense level of 30.

Based on his prior convictions and the fact that he was on parole when he committed the present offense, the PSI placed Overstreet into criminal

---

6       According to testimony at the sentencing hearing, DNA testing indicated that the blood was Taffy Overstreet's. (Crim. Doc. 47; Sentencing Tr. Vol. I at 105-11).

> history category V, which, combined with the offense level of 30, resulted in a guideline range of 151 to 188 months' imprisonment. However, the ACCA mandated a minimum sentence of 15 years, or 180 months, and thus Overstreet's guideline range became 180 to 188 months. <u>See</u> 18 U.S.C. § 924(e); U.S.S.G. § 5G1.1(c)(2). The statutory maximum term for Overstreet's offense was life imprisonment. <u>See</u> 18 U.S.C. § 924(e)(1); <u>United States v. Brame</u>, 997 F.2d 1426, 1428 (11th Cir. 1993) (holding the statutory maximum sentence under § 924(e) is life imprisonment, even though the statute does not state so expressly).

<u>Overstreet</u>, 713 F.3d at 629-31 (footnotes omitted). The Court determined that a Criminal History Category of V underrepresented the severity of Overstreet's criminal record, and therefore departed upward to a Criminal History Category of VI pursuant to U.S.S.G. § 4A1.3. (Crim. Doc. 48; Sentencing Tr. Vol. II at 55-57). The upward departure yielded an advisory sentencing range of 180 to 210 months in prison. <u>Id.</u> at 57.

The Court then varied above the Guidelines range and sentenced Overstreet to a term of 420 months in prison. <u>Id.</u> at 67. In explaining the upward variance, the Court pointed to Overstreet's horrendous criminal history, the fact that being on parole and serving 22 years in prison did not deter him from committing further criminal conduct, and the evidence that Overstreet likely murdered his wife. <u>Id.</u> at 59-67. Based on these facts, the Court explained, a significant upward variance was necessary to protect the public and to deter Overstreet from committing further crimes. <u>Id.</u> at 63.

Overstreet appealed the sentence, "argu[ing] that his ACCA enhancement was unconstitutional because (1) he did not admit the existence of his prior convictions when he pleaded guilty, and (2) the fact that his prior offenses were 'committed on occasions different from one another' should have been alleged in the indictment and proven beyond a reasonable doubt." <u>Overstreet</u>, 713 F.3d at 634-35.[7] The Eleventh Circuit rejected both

---

[7] On direct appeal, Overstreet did not argue that any of his ACCA predicate convictions failed to meet the statutory definition of a "violent felony." 18 U.S.C. § 924(e)(2)(B).

of these arguments because they were "foreclosed by binding precedent." Id. at 635; see also Almendarez-Torres v. United States, 523 U.S. 224, 226-27, 239 (1998) (the existence of a defendant's prior convictions need not be alleged in the indictment, admitted, or proven to a jury beyond a reasonable doubt); United States v. Sneed, 600 F.3d 1326, 1332-33 (11th Cir. 2010) (a district court has authority to make the different-occasions determination so long as it limits itself to Shepard-approved[8] sources). Overstreet also argued that his sentence was procedurally and substantively unreasonable, but the Eleventh Circuit rejected those arguments as well. Overstreet, 713 F.3d at 636-40. As such, the Eleventh Circuit affirmed Overstreet's sentence. Id. at 640.

Overstreet petitioned the United States Supreme Court for a writ of certiorari, but the Supreme Court denied certiorari review on October 7, 2013. Overstreet v. United States, 571 U.S. 896, 134 S. Ct. 229 (Mem.) (2013). A little less than three years later, on June 23, 2016, Overstreet filed the instant § 2255 Motion to challenge his ACCA sentence.

## II.    The ACCA and __Johnson__

Pursuant to 18 U.S.C. § 922(g), a person convicted of being a felon in possession of a firearm is ordinarily subject to a maximum term of imprisonment of 10 years. Under the ACCA, however, that person is subject to an enhanced mandatory minimum sentence of 15 years in prison if he has three or more prior convictions for a violent felony or a serious drug offense, or both, each committed on different occasions. 18 U.S.C. § 924(e)(1). At the time of Overstreet's offense conduct and sentencing, the term "violent felony" included "any crime punishable by imprisonment for a term exceeding one year"

---

[8]    Shepard v. United States, 544 U.S. 13 (2005).

that

> (i)     has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)     is burglary, arson, or extortion, involves use of explosives, <u>or otherwise involves conduct that presents a serious potential risk of physical injury to another.</u>

18 U.S.C. § 924(e)(2)(B) (emphasis added). Subsection (i) of this provision is referred to as the "elements clause," the first nine words of subsection (ii) are referred to as the "enumerated clause," and the rest of subsection (ii), which is emphasized above, is referred to as the "residual clause." <u>Mays v. United States</u>, 817 F.3d 728, 730-31 (11th Cir. 2016).

In <u>Johnson v. United States</u>, the Supreme Court held that the residual clause is unconstitutionally vague. 135 S. Ct. at 2557-58, 2563. However, the Supreme Court made clear that the elements clause and the enumerated clause remained unaffected. <u>Id.</u> at 2563. Later, in <u>Welch v. United States</u>, 136 S. Ct. 1257 (2016), the Supreme Court held that <u>Johnson</u> applies retroactively on collateral review.

For a prisoner to successfully challenge his ACCA sentence based on <u>Johnson</u>, he must prove "more likely than not" that the sentencing court relied on the residual clause to impose the ACCA enhancement. <u>Beeman v. United States</u>, 871 F.3d 1215, 1220-22 (11th Cir. 2017), <u>cert. denied</u>, 139 S. Ct. 1168 (2019).

> Only if the movant would not have been sentenced as an armed career criminal absent the existence of the residual clause is there a <u>Johnson</u> violation. That will be the case only (1) if the sentencing court relied solely on the residual clause, as opposed to also or solely relying on either the enumerated offenses clause or elements clause (neither of which were called into question by <u>Johnson</u>) to qualify a prior conviction as a violent felony, and (2) if there were not at least three other prior convictions that could have qualified under either of those two clauses as a violent felony, or as a serious drug offense.

Id. at 1221. "If it is just as likely that the sentencing court relied on the elements or enumerated offenses clause, solely or as an alternative basis for the enhancement, then the movant has failed to show that his enhancement was due to use of the residual clause." Id. at 1222.

Whether the sentencing court relied on the residual clause is a "historical fact," which is determined by reference to the state of affairs that existed at the time of sentencing. See id. at 1224 n.5. Thus, court decisions rendered afterward holding that a particular offense does not qualify under the elements clause or the enumerated offense clause "cast[ ] very little light, if any, on th[is] key question of historical fact." Id. A prisoner can establish that the sentencing court relied on the residual clause in two ways. First, the prisoner can point to "direct evidence: comments or findings by the sentencing judge indicating that the residual clause was relied on and was essential to application of the ACCA in that case." Id. at 1224 n.4. Alternatively, absent direct evidence, there will

> sometimes be sufficient circumstantial evidence to show the specific basis of the enhancement. For example, there could be statements in the PSR [Presentence Investigation Report], which were not objected to, recommending that the enumerated clause and the elements clause did not apply to the prior conviction in question and did not apply to other prior convictions that could have served to justify application of the ACCA. Or the sentencing record may contain concessions by the prosecutor that those two other clauses do not apply to the conviction in question or others.

Id. A prisoner may also circumstantially prove that the ACCA sentence depended on the residual clause "if the law was clear at the time of sentencing that only the residual clause would authorize a finding that the prior conviction was a violent felony." Id. at 1224 n.5 (emphasis added). However, if "'the evidence does not clearly explain what happened … the party with the burden loses.'" Id. at 1225 (quoting Romine v. Head, 253 F.3d 1349,

1357 (11th Cir. 2001)).

Additionally, the Eleventh Circuit has clarified that for purposes of <u>Beeman</u>, where a § 2255 movant challenged his ACCA sentence on direct appeal, the historical record includes the record through direct appeal. <u>Weeks v. United States</u>, 930 F.3d 1263, 1275 (11th Cir. 2019). Thus, "it is necessary in such a case to look to the record and binding precedent through the time of direct appeal to determine whether the claimant has shown 'that—more likely than not—it was use of the residual clause that led to the ... enhancement of his sentence.'" <u>Id.</u> (quoting <u>Beeman</u>, 871 F.3d at 1222).

## III.    Timeliness

Before reaching the merits, the Court addresses the United States' argument that the sole claim in Overstreet's § 2255 Motion is untimely. Response at 3-4. The United States asserts that Overstreet's § 2255 Motion is untimely under 28 U.S.C. § 2255(f)(1) because he did not file it until nearly three years after his conviction and sentence became final. <u>Id.</u> at 3. The United States also argues that Overstreet cannot rely on <u>Johnson</u> and § 2255(f)(3) to render the motion timely because his sentence did not depend on the residual clause. <u>Id.</u> at 4. Thus, according to the United States, "[t]he <u>Johnson</u> holding does not apply to this case." <u>Id.</u> at 15. Overstreet did not directly respond to the United States' timeliness argument. <u>See</u> <u>generally</u> Reply. However, Overstreet maintains that his ACCA sentence must have relied on the residual clause because, in light of <u>Descamps v. United States</u>, 133 S. Ct. 2276 (2013), and <u>Mathis v. United States</u>, 136 S. Ct. 2243 (2016), his prior Texas convictions for two burglaries and two attempted murders no longer qualify as violent felonies under the elements clause or the enumerated offense clause. <u>See</u> <u>id.</u>

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), there is a one-year statute of limitations for a federal prisoner to file a motion to vacate, set aside, or correct sentence. 28 U.S.C. § 2255(f). The limitations period runs from the latest of four possible trigger dates.

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

Overstreet's § 2255 Motion is not timely under § 2255(f)(1) because he filed it almost three years after his conviction and sentence became final.[9] Overstreet does not contend that §§ 2255(f)(2) or 2255(f)(4) are applicable. Thus, only § 2255(f)(3) can render the § 2255 Motion timely. To do so, the § 2255 Motion must depend on a "right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).

The Eleventh Circuit's discussion in Beeman about how to apply the statute of limitations is instructive. 871 F.3d at 1219-21. In Beeman, the prisoner filed a § 2255 motion raising three arguments:

---

[9]     Overstreet's conviction and sentence became final once the Supreme Court denied his petition for a writ of certiorari. Washington v. United States, 243 F.3d 1299, 1300-01 (11th Cir. 2001). Thus, the statute of limitations under § 2255(f)(1) began running on October 7, 2013.

First, he contended that the Johnson decision invalidated his ACCA sentences because when he was sentenced in 2009 his Georgia conviction for aggravated assault would have qualified as a violent felony under the residual clause of the ACCA. Second, he pointed out that his aggravated assault conviction was not a violent felony under the enumerated offenses clause because assault is not included in that list of crimes. And third, he argued that a conviction under the Georgia aggravated assault statute does not now qualify as a violent felony under the elements clause. In making that argument about the elements clause he relied heavily on the Supreme Court's 2013 decision in Descamps v. United States, 570 U.S. 254, 133 S. Ct. 2276, 186 L.Ed.2d 438 (2013), which is one in a line of Supreme Court decisions describing how federal courts should determine whether an offense qualifies as a predicate offense under the ACCA's enumerated offenses and elements clauses. See Mathis v. United States, 579 U.S. ——, 136 S. Ct. 2243, 195 L.Ed.2d 604 (2016); Descamps, 133 S. Ct. 2276; Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254, 161 L.Ed.2d 205 (2005); Taylor v. United States, 495 U.S. 575, 110 S. Ct. 2143, 109 L.Ed.2d 607 (1990).

Beeman, 871 F.3d at 1218.

The Eleventh Circuit determined that Beeman's § 2255 motion was timely to the extent he raised a Johnson claim, but that it was untimely to the extent he raised a Descamps claim. Id. at 1220. The Eleventh Circuit instructed that

[a] Johnson claim and a Descamps claim make two very different assertions. A Johnson claim contends that the defendant was sentenced as an armed career criminal under the residual clause, while a Descamps claim asserts that the defendant was incorrectly sentenced as an armed career criminal under the elements or enumerated offenses clause.

Id. Under § 2255(f)(3), a prisoner may bring a claim based on Johnson within one year of that decision because Johnson announced a newly recognized right that applies retroactively on collateral review. Id. at 1219 (citing Welch, 136 S. Ct. at 1268). However, "the Descamps decision cannot qualify as a triggering date under § 2255(f)(3)" because "Descamps did not set out a newly recognized right." Id. at 1220. "As a result, if [Beeman's] § 2255 motion raised a Johnson claim, that claim was timely, but any other claim the motion raised – including a Descamps claim – was untimely." Id. (alteration added). The

court determined that Beeman raised both types of claims in his § 2255 motion. Id. "He focused largely on an argument that the 2013 Descamps decision meant that his Georgia conviction for aggravated assault could no longer qualify as a violent felony under the elements clause. That is obviously a Descamps claim." Id. But to the extent Beeman argued that the district court relied on the residual clause to classify his Georgia conviction for aggravated assault as a violent felony, and that Johnson entitled him to be resentenced, "[t]hat sounds like a Johnson claim." Id. Thus the court ruled that Beeman's Descamps claim was time-barred but that his Johnson claim was not. Id.

Like Beeman, Overstreet raises both a Johnson claim and a Descamps claim. In his § 2255 Motion, Overstreet cites Johnson for the proposition that his sentence was unlawfully "enhanced under the [ACCA]'s residual clause." § 2255 Motion at 4. And in his Memorandum, Overstreet cites Johnson to argue that his sentence exceeds the statutory maximum. Memorandum at 1, 4-5. "That sounds like a Johnson claim." Beeman, 871 F.3d at 1220. But Overstreet also argues at length that his prior convictions for burglary and attempted capital murder "no longer" qualify as violent felonies under the elements clause or the enumerated offense clause. Memorandum at 4-5, 9, 11, 12. In doing so, he relies extensively on Descamps and Mathis. Id. at 4-7. "That is obviously a Descamps claim." Beeman, 871 F.3d at 1220.

Consistent with Beeman, the Court determines that Overstreet's § 2255 Motion is timely to the extent he raises a Johnson claim, i.e., that the Court applied the ACCA enhancement based on the now-invalid residual clause. However, Overstreet's § 2255 Motion is time-barred to the extent he argues that his prior convictions do not qualify as violent felonies under the elements clause or the enumerated offense clause based on

<u>Descamps</u> and <u>Mathis</u>.

## IV.     Analysis

<u>Johnson</u> does not entitle Overstreet to relief from his ACCA sentence because he has not met his burden of proof under <u>Beeman</u> and <u>Weeks</u>. That is, Overstreet has not "show[n] that—more likely than not—it was use of the residual clause that led to the sentencing court's enhancement of his sentence." <u>Beeman</u>, 871 F.3d at 1222. Nothing in the PSR, the sentencing record, or the legal landscape at the time of sentencing and through direct appeal suggests that Overstreet's sentence depended on the residual clause. Therefore, Overstreet has not shown that this Court or the Eleventh Circuit Court of Appeals "relied solely on the residual clause, as opposed to also or solely relying on either the enumerated offenses clause or elements clause" to identify a prior conviction as an ACCA predicate. <u>Id.</u> at 1221.

Overstreet's PSR listed five prior convictions as ACCA-qualifying offenses, each obtained in the state of Texas: (1) a 1983 conviction for burglary of a building, (2) a 1986 conviction for burglary of a habitation, (3) a 1986 conviction for attempted capital murder, (4) a 1986 conviction for aggravated sexual assault, and (5) a second 1986 conviction for attempted capital murder. PSR at ¶ 26. However, the PSR did not state whether these convictions qualified as violent felonies under the elements clause, the enumerated offense clause, or the residual clause. Likewise, neither Overstreet's nor the United States' sentencing memoranda discussed which violent felony clause applied to the prior convictions. (<u>See</u> Crim. Doc. 37; Overstreet's Sentencing Memorandum, Crim. Doc. 38; United States' Sentencing Memorandum).

At the sentencing hearing, the Court identified "four qualifying [ACCA] offenses that

occurred on occasions different from one another." Sentencing Tr. Vol. I at 34. Those were (1) the burglary of a building in 1983, (2) the burglary of a habitation on May 27, 1986, (3) the attempted capital murder of a peace officer on May 27, 1986, and (4) the aggravated sexual assault and attempted capital murder of a woman on May 28, 1986. Id. at 31-35. In doing so, the Court made no reference to the residual clause, the elements clause, or the enumerated offense clause. The Court had no reason to identify which clause applied to the prior convictions because Overstreet did not dispute that his prior convictions met the ACCA's definition of a violent felony. Id. at 29, 31. Rather, Overstreet's argument was that (1) the government was required to allege in the indictment, and prove to a jury beyond a reasonable doubt, that Overstreet had three ACCA predicate convictions, and (2) a jury must find beyond a reasonable doubt that each of the prior offenses were committed on different occasions. Consequently, the sentencing record gives no indication about what role, if any, the residual clause played at sentencing.

The record on direct appeal similarly offers no clarification. On appeal, Overstreet raised essentially the same arguments as he did at sentencing. Overstreet, 713 F.3d at 634-35 ("Overstreet argues that his ACCA enhancement was unconstitutional because (1) he did not admit the existence of his prior predicate convictions when he pleaded guilty, and (2) the fact that his prior offenses were 'committed on occasions different from one another' should have been alleged in the indictment and proven beyond a reasonable doubt.") (footnote omitted). Once again, Overstreet did not contest whether his prior convictions met the statutory definition of a violent felony. As a result, the Eleventh Circuit's opinion is devoid of any indication of whether Overstreet's ACCA enhancement was based on the residual clause as opposed to another ACCA clause.

Importantly, the legal landscape at the time of Overstreet's sentencing and through direct appeal does not suggest that any of his ACCA predicates qualified as a violent felony only under the residual clause. See Weeks, 930 F.3d at 1275; Beeman, 871 F.3d at 1224 n.5. The Court has not located any binding precedent, existent at the time of sentencing and through direct appeal (i.e., between December 2, 2011, when the Court imposed sentence, and October 7, 2013, when the Supreme Court denied certiorari review), holding that burglary of a building or habitation, aggravated sexual assault, or attempted capital murder under Texas law qualified as a violent felony exclusively under the residual clause. Nor has Overstreet pointed the Court to any such authority. Instead, Overstreet argues that his convictions "no longer" qualify as violent felonies under the elements clause or the enumerated offense clause in light of Descamps and Mathis. Memorandum at 4, 9, 11, 12; Reply at 3, 6, 7. But such arguments "cast[ ] very little light, if any, on the key question of historical fact here: whether in 20[11] [Overstreet] was, in fact, sentenced under the residual clause only." Beeman, 871 F.3d at 1224 n.5.

Indeed, given the state of the law in 2011, it is entirely possible this Court would have classified Overstreet's 1983 and 1986 burglary convictions as generic burglaries under the enumerated offense clause, § 924(e)(2)(B)(ii). The Supreme Court has held that for purposes of § 924(e)(2)(B)(ii), "burglary" means "the generic sense in which the term is now used in the criminal codes of most States." Taylor v. United States, 495 U.S. 575, 598 (1990) (citations omitted). "Although the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Id. (citations and footnote omitted). Regardless of any "minor variations in

terminology," id. at 599, as long as the state law in question "substantially corresponds" to (or is narrower than) generic burglary, the conviction qualifies under § 924(e)(2)(B), id. at 602.

When Overstreet committed the burglary offenses, Texas defined burglary as follows:

> (a) A person commits an offense if, without the effective consent of the owner, he:
>
> > (1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft; or
> > (2) remains concealed, with intent to commit a felony or theft, in a building or habitation; or
> > (3) enters a building or habitation and commits or attempts to commit a felony or theft.

Tex. Penal Code § 30.02(a) (1983, 1986). At the time of sentencing, the Fifth Circuit Court of Appeals treated the Texas burglary statute as divisible, with § 30.02(a)(1) qualifying as generic burglary, United States v. Silva, 957 F.2d 157, 162 (5th Cir. 1992), and § 30.02(a)(3) not qualifying as generic burglary because it does not require intent to commit a crime at the moment of entry, United States v. Constante, 544 F.3d 584, 586-87 (5th Cir. 2008).[10] See also United States v. Conde-Castaneda, 753 F.3d 172, 176 (5th Cir. 2014) ("We hold that the modified categorical approach applies here, meaning that we will consult Shepard documents to determine which of the three alternatives of Texas Penal Code § 30.02(a) forms the basis of Conde's conviction. This test applies because § 30.02(a) is a divisible statute."). And the Fourth Circuit Court of Appeals regarded (and still regards) the entire Texas burglary statute as categorically equivalent to generic burglary

---

[10] At the time of Overstreet's sentencing, it appears the Fifth Circuit had not decided whether § 30.02(a)(2) qualified as a generic form of remaining-in burglary. See United States v. Bernel-Aveja, 844 F.3d 206, 240 (5th Cir. 2016) (Owen, J., concurring).

because in its view, the generic definition does not require the intent to commit a crime at the moment of entry. United States v. Bonilla, 687 F.3d 188, 193 (4th Cir. 2012); accord United States v. Herrold, — F.3d —, 2019 WL 5288154 (5th Cir. Oct. 18, 2019) (en banc)[11]; see also Quarles, 139 S. Ct. at 1875 ("For purposes of § 924(e), we conclude that remaining-in burglary occurs when the defendant forms the intent to commit a crime at any time while unlawfully remaining in a building or structure." (emphasis in original)).

Here, the Shepard documents from Overstreet's 1983 and 1986 burglary convictions correspond to § 30.02(a)(1), which both the Fourth and Fifth Circuits deemed equivalent to generic burglary at the time of Overstreet's sentencing. The indictment from the 1983 burglary offense charged Overstreet as follows:

> [O]n or about the 15th day of July A.D. 1983 … the Defendant did then and there intentionally and knowingly enter a building without the effective consent of Richard Butler, the owner thereof, not then and there open to the public, with intent to commit theft, to-wit: with intent then and there to appropriate property unlawfully from Richard Butler….

Gov't Sentencing Ex. 5. This charge fits the language of § 30.02(a)(1). A 1986 order revoking Overstreet's probation reflects that he was convicted of the burglary offense described above. Gov't Sentencing Ex. 7. As for Overstreet's 1986 burglary conviction, the indictment alleged that Overstreet

> [O]n or about the 27th day of May A.D. 1986 …, did then and there intentionally and knowingly enter a building without the effective consent of William G. Wilkerson, the owner thereof not then and there open to the

---

[11]    In Herrold, the Fifth Circuit Court of Appeals, sitting en banc, unanimously ruled that the Texas burglary statute is not divisible, but that the statute categorically corresponds to the generic definition of burglary in light of Quarles v. United States, 139 S. Ct. 1872, 1875 (2019) (holding that "remaining-in burglary occurs when the defendant forms the intent to commit a crime at any time while unlawfully remaining in a building or structure"), and United States v. Stitt, 139 S. Ct. 399, 403-04 (2019) (holding that generic burglary encompasses burglary of a nonpermanent or mobile structure that is adapted or used for overnight accommodation, such as an RV). Herrold, — F.3d —, 2019 WL 5288154, at *7. Thus, under the current law of the Fifth Circuit, Overstreet's burglary convictions would qualify as violent felonies under the enumerated offense clause.

> public, with intent to commit theft, to-wit: with intent then and there to appropriate property unlawfully from William G. Wilkerson … without the effective consent of said owner and with intent to deprive said owner of said property, and that said building was then and there a habitation occupied by William C. [sic] Wilkerson.

Gov't Sentencing Ex. 6. This charge also fits the language of § 30.02(a)(1). The judgment reflects that Overstreet was convicted of the offense described above. Gov't Sentencing Ex. 8. Accordingly, the <u>Shepard</u> documents reveal that Overstreet had two separate convictions under § 30.02(a)(1), which, based on the state of the law at the time of sentencing and through direct appeal, would have qualified as generic burglaries. <u>Silva</u>, 957 F.2d at 162; <u>Conde-Castaneda</u>, 753 F.3d at 176.

It is further likely, given the state of the law in 2011, that the Court would have classified Overstreet's conviction for aggravated sexual assault as a violent felony under the elements clause. To reiterate, a prior conviction falls under the elements clause if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). "[T]he phrase 'physical force' means <u>violent</u> force – that is, force capable of causing physical pain or injury to another person." <u>Curtis Johnson v. United States</u>, 559 U.S. 133, 140 (2010) (emphasis in original). The term "use" under the elements clause "requires active employment" because the "use ... of physical force against the person or property of another [ ] most naturally suggests a higher degree of intent than negligent or merely accidental conduct." <u>Leocal v. Ashcroft</u>, 543 U.S. 1, 9 (2004); <u>see also</u> <u>United States v. Palomino Garcia</u>, 606 F.3d 1317, 1334-36 (11th Cir. 2010) (concluding that the elements clause in U.S.S.G. § 2L1.2 requires the use of force to be more than reckless or negligent).

When Overstreet committed the aggravated sexual assault, Texas law defined the crime as follows:

> (a) A person commits an offense if the person commits sexual assault as defined in Section 22.011[12] of this code and:
>
>> (1) the person causes serious bodily injury or attempts to cause the death of the victim or another person in the course of the same criminal episode;
>> (2) by acts or words the person places the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person*;*
>> (3) by acts or words occurring in the presence of the victim the person threatens to cause the death, serious bodily injury, or kidnapping of any person;
>> (4) the person uses or exhibits a deadly weapon in the course of the same criminal episode; or
>> (5) the victim is younger than 14 years of age.

Carter v. State, 713 S.W.2d 442, 445 (Tex. Ct. App. 1986) (quoting Tex. Penal Code § 22.021 (1986)) (emphasis omitted).[13] The indictment alleged that on May 28, 1986, Overstreet

> intentionally and knowingly by the use of physical force and violence and by threatening the present use of force and violence against [RR]… cause[d] the penetration of the female sexual organ of the Complainant by placing his sexual organ in the female sexual organ of the Complainant and without the consent of the Complainant[,] and the Defendant <u>caused serious bodily injury and attempted to cause the death of the Complainant in the course of the same criminal episode.</u>

---

[12]     A sexual assault occurs where a person intentionally or knowingly, and without the other person's consent, causes the penetration of the anus or sexual organ of another person, causes the penetration of the mouth of the other by the actor's sexual organ, or causes the other person's sexual organ to contact or penetrate the actor's mouth, anus, or sexual organ. Tex. Penal Code § 22.011(a)(1). A sexual assault also occurs if the actor engages in any of the aforementioned acts with a child, regardless of whether the defendant acts knowingly or intentionally. Id., § 22.011(a)(2).

[13]     In an unpublished opinion in 2007, the Fifth Circuit treated the aggravated sexual assault statute as divisible. <u>United States v. Garcia-Ortiz</u>, 241 F. App'x 222, 224-25 (5th Cir. 2007). In a published opinion, the Tenth Circuit also concluded that § 22.021 is divisible. <u>United States v. Madrid</u>, 805 F.3d 1204, 1207 (10th Cir. 2015), <u>abrogated on other grounds by</u> <u>Beckles v. United States</u>, 137 S. Ct. 886 (2017).

> It is further presented that … OVERSTREET … did then and there unlawfully intentionally and knowingly by the use of physical force and violence and by threatening the present use of force and violence against [RR]… cause[d] the penetration of the female sexual organ of the Complainant by placing his sexual organ in the female sexual organ of the Complainant and without the consent of the Complainant <u>and by acts and words the Defendant placed the Complainant in fear that serious bodily injury and death would be imminently inflicted on the Complainant</u>….

Gov't Sentencing Ex. 2 (emphasis added). The first paragraph's emphasized language tracks § 22.021(a)(1), while the second paragraph tracks § 22.021(a)(2). The judgment states that Overstreet was convicted of aggravated sexual assault "as charged in paragraph one of the indictment." Gov't Sentencing Ex. 3. That is, Overstreet was convicted of using physical force and violence to sexually assault the victim and "caus[ing] serious bodily injury and attempt[ing] to cause the death of the Complainant in the course of the same criminal episode." Gov't Sentencing Ex. 2. Notably, Overstreet does not dispute that this conviction qualifies as a violent felony under the elements clause. Indeed, it seems plain that the crime has as an element the use, attempted use, or threatened use of violent physical force against the person of another. 18 U.S.C. § 924(e)(2)(B)(i); <u>Curtis Johnson</u>, 559 U.S. at 140. Accordingly, it is plausible – if not likely – that in 2011 the Court would have classified the aggravated sexual assault conviction as a violent felony under the elements clause.[14] Because the aggravated sexual assault and two burglary offenses were each committed on different occasions, these three convictions alone – even without considering Overstreet's convictions for attempted murder – would have been enough to sentence Overstreet as an armed career criminal without resorting to the residual clause.

---

[14] Indeed, the Court likely would still classify this conviction as a violent felony under the elements clause today.

Finally, it is plausible, indeed likely, that in 2011 the Court would have classified Overstreet's attempted capital murder convictions as violent felonies under the elements clause as well. The murder statute in effect in 1986, which Overstreet agrees is the operative statute, Memorandum at 10, provided in relevant part:

> (a) A person commits an offense if he:
>
>    (1) intentionally or knowingly causes the death of an individual;
>    (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual;
>    (3) commits or attempts to commit a felony, other than voluntary or involuntary manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

Tex. Penal Code § 19.02 (1986). See 1973 Tex. Gen. Laws 1123, eff. Jan. 1, 1974.[15] Two recent decisions by district courts in Texas are of value in determining how this Court would have evaluated Overstreet's 1986 conviction under § 19.02. Green v. United States, No. 1:16cv229, 2019 WL 4316092, at *2-3 (E.D. Tex. Aug. 15, 2019), report and recommendation adopted, 2019 WL 4305651 (E.D. Tex. Sep. 10, 2019); Richardson v. United States, No. 3:16-cv-1779-K, 2019 WL 3338263, at *3-6 (N.D. Tex. Jul. 25, 2019). Notably, § 19.02 categorically has as an element the use, attempted use, or threatened use of violent physical force against the person of another. Indeed, in Richardson, the court reasoned that "Texas murder, regardless of the particular means employed,

---

[15]    The criminal attempt statute provides in relevant part that "[a] person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." Tex. Penal Code § 15.01(a).
    A separate statute provides, in pertinent part, that murder is a capital offense if the defendant "murders a peace officer … who is acting in the lawful discharge of an official duty and who the person knows is a peace officer," Tex. Penal Code § 19.03(a)(1), or if the person commits murder in the course of committing aggravated sexual assault, id., § 19.03(a)(2).

categorically requires an act 'that causes the death of an individual,'" and "'[i]t is hard to imagine conduct that can cause another to die that does not involve physical force against the body of the person killed.'" Id. at *4 (quoting United States v. Checora, 155 F. Supp. 3d 1192, 1197 (D. Utah 2015)); see also In re Irby, 858 F.3d 231, 237 (4th Cir. 2017) ("Common sense dictates that murder is categorically a crime of violence under the force clause [of 18 U.S.C. 924(c)]."). Similarly, in Green the court reasoned that "[e]ach subsection of the Texas murder statute requires the commission of an act that results in the death of an individual. Each subsection therefore requires the use of force capable of causing injury or pain against another individual." Green, 2019 WL 4316092, at *2 (citations omitted). This Court likely would have reasoned as Richardson and Green did, and found that Overstreet's attempted murder under § 19.02 categorically has as an element the use, attempted use, or threatened use of violent physical force against another person.[16]

---

[16]    The Court recognizes that a different judge in Texas concluded that the murder statute is indivisible and does not qualify as a violent felony under the elements clause. Vickers v. United States, No. 3:15-cv-3912-B-BH, 2018 WL 4627131, at *3-8 (N.D. Tex. May 7, 2018), report and recommendation adopted, 2018 WL 2725285 (N.D. Tex. Jun. 5, 2018). But Vickers rests on a distinction between "direct force" and "indirect force." The Vickers court reasoned that the Texas murder statute encompasses the indirect use of force (such as murder by poisoning), which in that court's view does not constitute the use of violent physical force. Id. at *6-8 (citing, inter alia, United States v. Reyes-Contreras, 882 F.3d 113 (5th Cir.), rev'd en banc, 910 F.3d 169 (5th Cir. 2018); United States v. Rico-Mejia, 859 F.3d 318 (5th Cir. 2017); United States v. Villegas-Hernandez, 468 F.3d 874 (5th Cir. 2006)). However, the distinction Vickers drew between direct force and indirect force does not appear to be one that was ever recognized in the Eleventh Circuit. See Hylor v. United States, 896 F.3d 1219, 1222-23 (11th Cir. 2018) (rejecting a distinction between the direct or indirect use of force; concluding that murder by poisoning would qualify as the use of violent physical force because it entails force "exerted by and through concrete bodies" that is capable of causing physical pain or injury. (quoting Curtis Johnson, 559 U.S. at 138)). Moreover, the en banc Fifth Circuit has since repudiated the distinction between direct force and indirect force. Reyes-Contreras, 910 F.3d at 187 (overruling, inter alia, Rico-Mejia, 859 F.3d 318, and Villegas-Hernandez, 468 F.3d 874). On rehearing in Reyes-Contreras, the en banc Fifth Circuit ruled that a person uses physical force anytime "he knowingly or intentionally applies or employs a force capable of causing physical pain or injury," 910 F.3d at 185, regardless of whether that force is

Accordingly, neither the record nor the state of the law between sentencing and direct appeal provides any evidence that Overstreet's ACCA sentence relied on the residual clause. To borrow the United States' words, "the residual clause was not the only – or even the most – plausible basis for this Court's decision to count" any of Overstreet's ACCA predicate convictions as a violent felony. Response to Supp. Auth. at 10. "If it is just as likely that the sentencing court relied on the elements or enumerated offenses clause, solely or as an alternative basis for the enhancement, then the movant has failed to show that his enhancement was due to use of the residual clause." Beeman, 871 F.3d at 1222. Such is the case here. Because Overstreet has not "show[n] that the [residual] clause actually adversely affected the sentence he received," id at 1221 (citing In re Thomas, 823 F.3d 1345, 1349 (11th Cir. 2016)), he is not entitled to relief based on Johnson.

## V. Certificate of Appealability

The undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Overstreet "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

---

direct or indirect, id. at 187. Therefore, Vickers appears to rest on a legal distinction that is not recognized in the Eleventh Circuit and is no longer valid in the Fifth Circuit.

Where a district court has rejected a petitioner's claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby **ORDERED:**

1. Petitioner Archery Lynn Overstreet's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. The Clerk is directed to enter judgment in favor of the United States and against Overstreet, and close the file.

3. If Overstreet appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 22nd day of October, 2019.

MARCIA MORALES HOWARD
United States District Judge

lc 19

Copies:
Counsel of record
Petitioner